1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IRSHAD AHMAD FAQERI, | CASE NO. 2:26-cv-00003-JHC |
| Petitioner, | ORDER |
| v. | |
| BRUCE SCOTT ET AL., | |
| Respondents. | |

**I**
**INTRODUCTION**

This matter comes before the Court on Petitioner Irshad Ahmad Faqeri's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the record, and the governing law. Being fully advised, the Court GRANTS the Petition.

**II**
**BACKGROUND**

Petitioner is a 32-year-old, non-U.S. citizen who was born in Afghanistan. Dkt. # 1 at 4. Petitioner alleges that he fled Afghanistan when the United States withdrew from the country "due to being threatened on account of his political opinion and his work alongside U.S. forces with the Afghan Ministry of Defense." *Id.* Petitioner left Afghanistan on a U.S. military

ORDER - 1

evacuation plane in August 2021, and was admitted to enter the United States on August 23, 2021. *Id*. at 4, 6; *see also* Dkt. # 6 at 2.

Petitioner entered the United States on humanitarian parole pursuant to the "Operation Allies Welcome" program, a U.S. Department of Homeland Security program created to help "vulnerable Afghans, including those who worked alongside the United States in Afghanistan for the previous two decades [to] safely resettle in the United States." Dkt. # 1 at 4 (cleaned up and citations omitted), *see also id*. at 6; Dkt. # 6 at 2. Petitioner was initially paroled for a term of two years, and he received work authorization in connection with that parole. Dkt. # 1 at 6. In August 2023, his parole was automatically extended until August 22, 2025. *Id*.; *see also* Dkt. # 6 at 2.

Petitioner applied for asylum on December 19, 2022. *Id*. On April 5, 2024, United States Citizenship and Immigration Services (USCIS) issued a Notice of Intent to Deny the asylum application. Dkt. # 1 at 6. Petitioner did not respond to the notice, so USCIS issued a Notice of Denial on April 26, 2024. *Id*.; *see also* Dkt. # 6 at 2. Petitioner contends that he did not respond because the notices were sent to the wrong address. Dkt. # 1 at 6. He thus alleges he did not receive actual notice of USCIS's intention to deny his application until it was too late to respond, causing him to file a motion in May 2024 to reopen and reconsider his case. *Id*. at 7. Petitioner's motion for reconsideration was denied on August 13, 2025, and his parole expired soon after. *Id*.; *see also* Dkt. # 6 at 2.

On November 30, 2025, ICE officers arrived at Petitioner's home in Vancouver, Washington and arrested him. *See* Dkt. ## 1 at 8; 6 at 2; 9 at 2. After his arrest, Petitioner was transported to the Portland ICE Field Office for processing. Dkt. # 7 at 2. The government also issued an I-200 warrant for his arrest and served Petitioner with a Notice to Appear before an Immigration Judge. *Id*.; *see also* Dkt. ## 6 at 2; 1 at 8. Petitioner contends that prior to his

ORDER - 2

arrest, he was not given any notice or opportunity to be heard. Dkt. # 1 at 8. He also contends that during his more than four years as a U.S. resident, he was never convicted of any crimes, he attended all his ICE check-ins and court hearings, and he reported all his change of addresses to the government. *Id*. Respondents do not dispute these allegations, nor do they provide any explanations for why ICE officers went to Petitioner's house on November 30, 2025 and placed him in custody. *See generally* Dkt.

Petitioner was then moved to the Northwest ICE Processing Center in Tacoma, Washington, where he remains detained today. Dkt. # 1 at 8; *see also* Dkt. # 6 at 2. On January 2, 2026, Petitioner filed this petition for writ of habeas corpus seeking various forms of relief, including an order requiring Respondents to immediately release Petitioner from custody on the conditions of his prior release. Dkt. # 1 at 36. Petitioner contends that such an order is warranted, as his continued detention violates his right to due process under the Fifth Amendment of the U.S. Constitution as well as certain provisions of the Administrative Procedure Act (APA). *See generally id*. Respondents oppose the petition, arguing that: (1) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1255(b); (2) Petitioner is not entitled to a pre-detention hearing; (3) the automatic termination of Petitioner's parole in August 2025 provides a valid basis for his re-detention; and (4) Petitioner's APA claims must fail for lack of subject matter jurisdiction.

### III
### DISCUSSION

A.   Legal Standards

   1.   Habeas Relief

Federal district courts have the authority to grant a writ of habeas corpus. 28 U.S.C. § 2241(a). But this relief can be extended only under certain conditions. *See* 28 U.S.C. § 2241(c).

ORDER - 3

One such condition is if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" *Id.* "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

2.  Due Process

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). And the Supreme Court has held that noncitizen "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *J. G. G.*, 604 U.S. at 673 (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In evaluating how much process is due in the immigration context, Ninth Circuit courts have recently looked to, and applied, the three-factor balancing test from *Mathews v. Eldridge*. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the

ORDER - 4

immigration detention context.").[1]  Under this test, determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

B.   Analysis

Petitioner contends that he is entitled to habeas relief because his continued detention violates his constitutional right to due process under the *Mathews* test.  *See generally* Dkt. # 1.  The Court agrees.  It thus grants Petitioner habeas relief and declines to address the parties' APA and mandatory detention arguments.

   1.   Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]"  *Mathews*, 424 U.S. at 335.  Freedom from detention "is the most elemental" of private interests affected by official action.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention.  53 F.4th at 1207.  In applying *Mathews*, the *Rodriguez Diaz* Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings, the Ninth Circuit itself has "regularly applied *Mathews* to due process challenges to removal proceedings[,]" and the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing.  *Id.* at 1206; *see also Landon v. Plasencia,* 459 U.S. 21 (1982).  In recent months, district courts in this Circuit have repeatedly applied *Mathews* to resolve habeas petitions brought by noncitizens.  *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying the *Mathews* test and collecting cases that employed this test in the context of immigration detention).  The Court likewise follows this approach and applies *Mathews* here.

protects."). So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482.

This same principle applies to noncitizens who are paroled into the United States. *See Espinoza v. Kaiser*, 2025 WL 2675785, at *9 (E.D. Cal. Sept. 18, 2025) ("When an immigrant is placed into parole status after having been detained, a protected liberty interest may arise."). In fact, courts in this Circuit have held that a parolee's liberty interest is protected by the Due Process Clause, even if "a statute allows the immigrant's arrest and detention and does not provide for procedural protections." *Id.*; *see also Noori v. LaRose*, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) (concluding that the habeas petitioner has a protected liberty interest "even in his parole status").

Here, Petitioner has a liberty interest protected by the Due Process Clause. That the government allowed Petitioner to remain in the community for more than four years on parole only strengthened this interest. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same). Between August 2021 and November 2025, Petitioner received work authorization, attended all his scheduled ICE check-ins and court hearings, reported his change of addresses to the government, and otherwise complied with the conditions of his parole. This illustrates that he was released long enough to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby changing his constitutional status and affording him a right to due process. *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)) (cleaned up). In detaining Petitioner since November 30, 2025, then, the government has undeniably deprived Petitioner of a liberty interest protected by the Due Process Clause.

Respondents do not contest that Petitioner has a "weighty" liberty interest in his continued freedom. *See* Dkt. # 6 at 5. Instead, they argue that "the weight of [Petitioner's] liberty must be considered in the broader picture of the immigration system, which has long acknowledged that an alien has a less liberty interest than a citizen." *Id*. But while the Court agrees with Respondents' general argument that noncitizens do not have an absolute liberty interest, such an argument has no bearing on the due process issue before the Court: although the government may detain noncitizens as part of the deportation process, noncitizens must still be afforded due process protections before they are detained. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Likewise, just because Petitioner may have a lesser liberty interest compared to others does not mean that Petitioner possesses no liberty interest in his continued freedom nor that his liberty interest was extinguished when his parole expired in August 2025. *See Mody v. Warden*, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (quoting *Omer G.G. v. Kaiser, et al.*, 2025 WL 3254999, *5 (E.D. Cal. 2025)) ("That petitioner's parole may have expired when its term ended . . . is irrelevant because 'petitioner's liberty interest did not expire along with his parole.'"). Accordingly, the first *Mathews* factor favors Petitioner.

  2.  Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, the Court finds that the government's procedures were constitutionally insufficient. Respondents provide no specific justification for Petitioner's re-detention. *See generally* Dkt.

ORDER - 7

Instead, Respondents assert that "the risk of a constitutionally significant and erroneous deprivation of Petitioner's liberty here is low" because "Petitioner had notice of the date his parole would expire" and so "was on clear notice that his release from detention would cease after the expiration of his parole." Dkt. # 6 at 6. But the expiration of Petitioner's parole in August 2025 does not explain why Petitioner was re-detained at his home on November 30, 2025. Likewise, the expiration of Petitioner's parole, without more, does not constitute a change in circumstances that would justify re-detention. *See Omer G. G.*, 2025 WL 3254999, at *5 ("[T]he applicable regulations provide that if parole expires, a noncitizen shall again be released on parole if their exclusion, deportation, or removal order cannot be executed within a reasonable time, [unless] in the opinion of a DHS official the public interest requires that the alien be continued in custody.") (citations and internal quotation marks omitted). The Court also does not find that Petitioner's purported notice about his *parole* expiring in August 2025 satisfies the essential requirements of due process—notice and an opportunity to be heard—for his *re-detention* in November 2025. The Court thus concludes that the government's procedures were constitutionally insufficient.

The Court also finds that the risk of erroneous deprivation is high. Since August 2021, Petitioner has complied with the conditions of his parole and maintained his status in the community without incident. Because more than 4 years have passed since Petitioner was paroled into the country, the Court concludes that there is a significant risk of an erroneous deprivation of Petitioner's liberty interests if the government is permitted to re-detain Petitioner without providing him with a meaningful opportunity to be heard, let alone without a case-specific justification for his re-detention. *See Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.");

ORDER - 8

*Pinchi*, 792 F. Supp. at 1035 ("[T]here is a significant risk that the government will erroneously deprive [the petitioner] of [their] liberty interest if it does not provide [them] with a pre-detention hearing."); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d at 1323 (collecting cases). Thus, the second *Mathews* factor favors Petitioner.

        3.        Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Respondents contend that Petitioner's re-detention is warranted because the government has an interest in "preventing aliens from remaining in the United States in violation of our law" and protecting immigration proceedings from unnecessary delay. Dkt. # 6 at 6–7 (quoting *Rodriguez Diaz*, 53 F.4th at 1208 (cleaned up and citations omitted)). But while the Court acknowledges these governmental interests, it does not find that they specifically apply in Petitioner's case, as Respondents have provided no evidence that Petitioner has engaged in unnecessary delay of his immigration proceedings or otherwise violated the law. *See generally* Dkt. It also does not find that affording Petitioner with increased procedural protections, such as a pre-detention hearing, would meaningfully impact the government's cited interests. On this record, then, the Court does not find that the government has a strong interest in re-detaining Petitioner before providing him with actual notice and a meaningful opportunity to be heard.

Because the *Mathews* factors favor Petitioner on balance, the Court concludes that Petitioner's re-detention violates his constitutional right to due process. As a result, he has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
## CONCLUSION

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1).

(2) ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before his arrest in November 2025.[2] Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) DIRECTS the clerk to send uncertified copies of this Order to all counsel of record.

Dated this 26th day of January, 2026.

_John H. Chun_
John H. Chun
United States District Judge

---

[2] *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

ORDER - 10